J-A23035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| KIMBERLY A. BARRY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL S. BARRY | : | No. 470 MDA 2023 |

Appeal from the Order Entered March 22, 2023
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s): A-72-2023

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: NOVEMBER 21, 2023**

Appellant, Kimberly A. Barry, appeals from the March 22, 2023, order entered in the Court of Common Pleas of Schuylkill County, which denied her request for protection under the Protection From Abuse ("PFA") Act. *See* 23 Pa.C.S.A. §§ 6101-6117. Appellant filed a PFA petition against her husband, Appellee Michael S. Barry, from whom she is separated. After a careful review, we vacate the trial court's March 22, 2023, order, and we remand for further proceedings.

The relevant facts and procedural history are as follows: Appellant and Appellee have two minor children, and after the parties separated in September of 2021, they participated in child custody proceedings, which

---

[*] Former Justice specially assigned to the Superior Court.

resulted in the trial court ordering shared custody of the children. On March 8, 2023, Appellant filed a PFA petition against Appellee and for herself. Therein, she relevantly alleged:

> [Appellee] has made numerous attempts to get a hold of [Appellant's] work schedule, [to] which he's not entitled. Police reports were made, and he was notified to not contact [Appellant] for any reasons except in regards to [the] children. [Appellee] continued to message [Appellant] through wizard app with constant name calling, demanding [her] work schedule, and charges were then filed against him for harassment. Charges [are pending] against him, but [he] still continues to contact [Appellant] after [he was] told not to.
>
> One of [Appellee's] customers reached out to [Appellant] [on] March 1, 2023, notifying [her] that [Appellee] made threats against [her] saying he will shoot [her] if he los[es] custody of his children, and he can't lose if [she] is dead. This scares [Appellant] and makes [her] fear for [her] life. [Appellee] has a history of abuse with [Appellant], holding [her at] gunpoint and strangling [her]. [Appellee] has made many threats that if [Appellant] leaves and takes [the] kids he will kill [her]. His drug abuse makes him very violent.

PFA Petition, filed 3/8/23. On that same date, the trial court entered a temporary PFA order against Appellee.

On March 22, 2023, the trial court held a hearing at which Appellant and Appellee, along with their respective attorneys, were present. During the hearing, Appellant testified she and Appellee were married in May of 2005. N.T., 3/22/23, at 3-4. They have two minor children, and they separated in September of 2021. *Id.* Under the existing custody order, the parties have a shared custody arrangement, which revolves around Appellant's work schedule. *Id.* at 4.

Appellant testified that Appellee is self-employed and has his own electrical business. *Id.* Appellant indicated that one of Appellee's customers advised her of a threat Appellee had made against Appellant. Relevantly, the following exchange occurred during the direct examination of Appellant:

Q: Time out, [Appellant], I'm going to ask you a question.

Why do you need a protection order against your husband?

A: The most recent thing is he is making threats about killing me. When I lived with him, many times I have been held at gunpoint by him.

[APPELLEE'S COUNSEL]: Objection, Your Honor. These allegations are stale. The parties separated in 2021. There's been a custody order where they agreed to shared custody. They've lived separate and apart for going on two years.

[APPELLANT'S COUNSEL]: She can certainly testify to recent threats to kill.

THE COURT: That's right. And I want to hear that. I want to know what happened on March 1, 2023.

Q: What happened March 1, 2023?

A: That's when I got notified from a customer.

THE COURT: Wait. Did you hear [Appellee], your husband, threaten you?

A: No.

Q: Has he ever threatened you in your presence?

A: Yes.

Q: How long ago?

A: I mean, we've been separated since September 8th of 2021. Since then, there's been a couple, but it's all been prior to me moving out.

Q: Okay. Well, since your separation, what threats to harm you has he made?

A: He's made threats to me that if I take his children away from him, he will kill me. He's also told me, I know you're aware—I know you're afraid of guns and I will come after you with [my] guns.

He has come to my property numerous times, sometimes for custody transfers, other times not for custody transfers, and the cops had to have been called to have him be removed off my property.

Q: Now, did you take these threats seriously?

A: Yes, I do.

Q: Why?

A: Because there's a history of severe abuse. There's a history of threats, there's a history of guns being held to me.

[APPELLEE'S COUNSEL]: Objection, Your Honor. That's stale. It's way beyond the scope of this proceeding.

[APPELLANT'S COUNSEL]: She can testify, even if it's stale evidence, as to why she takes the threat right now seriously.

THE COURT: Well, was a gun used in any one of these—in the present incidents?

THE WITNESS: No.

THE COURT: Ask another question.

[APPELLANT'S COUNSEL]: Does your husband have guns?

THE WITNESS: Not right now. They were taken when he was served [with the temporary] PFA.

[APPELLANT'S COUNSEL]: Are there any criminal charges pending against your husband?

THE WITNESS: Yes. He currently has harassment charges pending against him.

THE COURT: As a result of this incident?

THE WITNESS: No. Other incidents.

THE COURT: We're going to ignore that.

[APPELLEE'S COUNSEL]: It's only a summary citation, Your Honor. It hasn't been proven. It hasn't even gone to court yet.

THE COURT: It's not relevant to this proceeding.

[APPELLEE'S COUNSEL]: And I object for relevance.

[APPELLANT'S COUNSEL]: Well, I would just say for the record, if there are harassment charges pending against him that it addresses why she would take a threat to harm her seriously, if it's harassment of a stalking nature.

- 4 -

[APPELLEE'S COUNSEL]: Which it isn't, Your Honor, it's only a summary. And you should know the elements of a harassment citation are far different than what the statute requires in a protection from abuse proceeding.

THE COURT: It's not relevant to this proceeding. Stick with what happened between these parties and not as between third parties, other parties, and other things that may have happened.

*Id.* at 6-9.

On cross-examination, Appellant indicated she and Appellee have been living in separate residences since September 8, 2021. *Id.* at 11. She noted that, upon her request, the custodial exchanges between her and Appellee occur at the Pine Grove Police Station. *Id.* at 12.

Kristi Haldeman testified she lives in Pine Grove, and she has known Appellee and his family for a long time. *Id.* at 15. She testified that, during the 1990s, she used to complete Appellant's and Appellee's taxes, and Appellee has performed some electrical work for her in her house. *Id.* at 16. Ms. Haldeman indicated the last time Appellee was in her house was in August of 2022. *Id.* at 16-17. She testified that, while Appellee was doing electrical work in her house in August of 2022, Appellee told her he was getting a divorce, he was fighting for custody, and he would get full custody of his kids "one way or another." *Id.* at 17.

She testified that, when Appellee was working in her house in August of 2022, Appellee told her that "he had his wife down by the throat, a gun in her face, how they were fighting." *Id.* She indicated that, during this incident, Appellee told Ms. Haldeman that he could "sit alongside the road and take

- 5 -

[Appellant] out on her way home if that's what he had to do to get custody of his kids." *Id.*

Ms. Haldeman indicated that, after Appellee completed the electrical work, she contacted Appellant in March of 2023, to advise her of the threats Appellee had made against her. *Id.* at 19-20.

At this point, the following relevant exchange occurred:

[APPELLANT'S COUNSEL]: [W]e have the [parties' fourteen-year-old son] here who can testify. It is dated but he could testify as to [Appellee's] threats against [Appellant] to kill her and himself.

[APPELLEE'S COUNSEL]: Your Honor, we had a custody trial. The minor child testified *in camera*. In order to enable myself to defend this on behalf of my client, I asked Judge Hale if we could have the transcript [from the *in camera* hearing]. She said no, she didn't want this transcript floating around, and she didn't want this child any further traumatized.

Frankly, if the offer of proof is that the child is going to talk about stuff that occurred well back into the marriage [before] the separation, it's really not relevant to why there's a current need for a PFA.

[APPELLANT'S COUNSEL]: May I make an offer of proof? Our offer of proof is [on] August 10th of 2021, [Appellee] told their [then] 13-year-old son, he asked him if he knew what an orphanage was and why children would go there. He then contacted his parents and said be prepared to raise the kids because he's go[ing] to kill him and her.

THE COURT: Well, where's the child?

[APPELLANT'S COUNSEL]: Outside

THE COURT: Outside the courtroom or outside in the parking lot?

[APPELLANT'S COUNSEL]: Outside the courtroom.

[APPELLEE'S COUNSEL]: Even still, Your Honor, assuming that were true, that was August of 2021. That's almost two years ago.

THE COURT: Is that when that happened?

[APPELLANT'S COUNSEL]: Yes.

THE COURT: That's not relevant to this proceeding.

*Id.* at 20-22.

The following relevant exchange then occurred:

THE COURT: I just want to know, what was—refresh me. Were there threats of violence of violence against [Appellant]?

[APPELLANT'S COUNSEL]: Your Honor, all I can say is in our petition is yes, there were threats that she's testified he's made threats to kill her. A threat was communicated from the witness she called.

I mean, he is obsessed with her, getting her work schedule. And it's escalated in a custody case where there are guns to the point where he is making threats to kill her.

THE COURT: Well, the guns have been confiscated, right?

[APPELLANT'S COUNSEL]: Well, they won't be if the Court denies her petition.

THE COURT: What was the harm that was proved—testified to?

[APPELLANT'S COUNSEL]: A threat to kill. A threat to kill, which in a child custody case should be taken seriously.

[APPELLEE'S COUNSEL]: A threat to kill whom though?

[APPELLANT'S COUNSEL]: She testified to her[self].

[APPELLEE'S COUNSEL]: No. She didn't testify at all, not to herself.

[APPELLANT'S COUNSEL]: Yes, she did. She said he has made threats to kill her.

[APPELLEE'S COUNSEL]: Not since they separated.

[APPELLANT'S COUNSEL]: And now since they've separated, we have an email that we could confront him with where he goes to her boss, he lies, he wants her work schedule. He says, I'm her boyfriend, I need her work schedule.

It's escalating, Judge. This is a volatile custody—I understand that custody has nothing to do with this, but when it starts to escalate in a custody case where you're obsessively contacting other people and her to get a work schedule, it has a very good chance of escalating into violence.

[APPELLEE'S COUNSEL]: The only reason he wants the work schedule, Your Honor, is because they have a two/three/two based work schedule, and these children are getting up at four o'clock in the morning and he wants some reasonable notice about when he's going to get the children. That's a custody matter.

[APPELLANT'S COUNSEL]: When you start lying to other people to get a work schedule and you're making threats to kill and you've got guns, that's a serious matter.

THE COURT: [Appellee], can you stay away from your wife and not make any threats and talk with her only on the app about arranging the transfer of the children?

[APPELLEE]: I can continue that, yes.

THE COURT: And you're not going to make any threats against her; is that right?

[APPELLEE]: I do not, have not, will not make threats against her.

*** 

THE COURT: So that's a promise; is that right?

[APPELLEE]: That's a promise.

*Id.* at 22-25.

The trial court then summarily denied and dismissed Appellant's PFA action against Appellee. Appellant filed a timely appeal on March 27, 2023, and all Pa.R.A.P. 1925 requirements have been met.

On appeal, Appellant presents the following issues in her "Statement of the Questions Involved" (verbatim):

> I.    Did the trial court commit an error of law when it found that past abuse was not relevant and refused to permit Appellant to testify about the prior abuse committed by Appellee when it was offered to show why Appellant's fear of Appellee was reasonable and warranted the entry of a Protection from Abuse Order?
>
> II.   Did the trial court commit an error of law when it precluded Appellant from presenting the minor child as a witness who

would have testified to prior threats made by [Appellee] to kill Appellant finding the testimony would not be relevant?

III. Did the trial court abuse its discretion when it refused to permit Appellant to testify about [Appellee's] behavior that led the police to press criminal charges against him for harassment?

Appellant's Brief at 4 (suggested answers omitted).

We begin by observing the appropriate standard of review. This Court reviews a trial court's PFA decision for an abuse of discretion. "An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the results of partiality, prejudice, bias, or ill-will." *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa.Super. 2013). "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *K.B. v. Tinsley*, 208 A.3d 123, 128 (Pa.Super. 2019) (citation omitted). Moreover, we are not entitled to re-weigh the evidence. *See C.H.L. v. W.D.L.*, 214 A.3d 1272, 1276-77 (Pa.Super. 2019).

The PFA Act is designed to shield a protected party from violence, sexual abuse, or other abuse. *Buchhalter v. Buchhalter*, 959 A.2d 1260, 1262 (Pa.Super. 2008) (citations omitted). The PFA Act does not seek to determine criminal culpability; a petitioner is not requested to establish abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. *See K.B.*, 208 A.3d at 128 (citation omitted); 23 Pa.C.S.A. § 6107(a). The

preponderance of the evidence standard "is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa.Super.2004) (citation omitted).

In the case *sub judice*, Appellant sought a final PFA order against Appellee on the basis Appellee "placed her in reasonable fear of imminent serious bodily injury and…he engaged in a course of conduct that placed her in reasonable fear of bodily injury." Appellant's Brief at 12 (citations omitted). Relevantly, the PFA Act defines "abuse" as follows:

> **"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> ***
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> ***
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(2), (5) (emphasis in original).[1]

---

[1] The PFA Act does not provide its own definitions of "serious bodily injury" or "bodily injury" but adopts the definition from the Crimes Code. ***See*** 23 Pa.C.S.A. § 6102(b) ("Terms not otherwise defined in this chapter shall have the meaning given to them in 18 Pa.C.S.[A.] (relating to crimes and
*(Footnote Continued Next Page)*

With these legal precepts in mind, we turn to an examination of Appellant's issues.

In her first, Appellant contends the trial court erred in holding Appellee's past abuse of Appellant was not relevant, and, thus, erred in refusing to permit Appellant to testify about instances of prior abuse. Appellant avers the past abuse was relevant to demonstrate that Appellant was in reasonable fear of either bodily harm (via Appellee's course of conduct or repeatedly committing acts) or serious bodily harm.

In developing her issue, Appellant specifically points to the following portion of the PFA hearing:

> [APPELLANT]: He's made threats to me that if I take his children away from him, he will kill me. He's also told me, I know you're aware—I know you're afraid of guns and I will come after you with [my] guns.
>
> He has come to my property numerous times, sometimes for custody transfers, other times not for custody transfers, and the cops had to have been called to have him be removed off my property.
>
> [APPELLANT'S COUNSEL]: Now, did you take these threats seriously?
>
> [APPELLANT]: Yes, I do.
>
> [APPELLANT'S COUNSEL]: Why?
>
> [APPELLANT]: Because there's a history of severe abuse. There's a history of threats, there's a history of guns being held to me.

_____

offenses.")). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protected loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." **_Id._**

[APPELLEE'S COUNSEL]: Objection, Your Honor. That's stale. It's way beyond the scope of this proceeding.

[APPELLANT'S COUNSEL]: She can testify, even if it's stale evidence, as to why she takes the threat right now seriously.

THE COURT: Well, was a gun used in any one of these—in the present incidents?

[APPELLANT]: No.

THE COURT: Ask another question.

N.T., 3/22/23, at 7-8.

In explaining the reasons that it precluded Appellant's testimony regarding Appellee's past abuse of Appellant, the trial court indicated the following in its Rule 1925(a) opinion:

Appellant complains…that the [trial] court erred in precluding her testimony regarding [Appellee's] prior acts of abuse. [The trial court] found such proposed testimony to raise stale allegations that were involved and resolved in the parallel custody action.

Trial Court Opinion, filed 5/11/22, at 1. The trial court noted that "[t]he rancor existing between the parties in the parallel custody proceeding does not justify the entry of a protection from abuse order." *Id.*

We agree with Appellant that the trial court erred precluding her testimony regarding Appellee's past abuse, including the "history of severe abuse…[and the] history of guns being held to [Appellant]." N.T., 3/22/23, at 7.

This Court has held that, "[i]n the context of a PFA case, the [trial] court's objective is to determine whether the victim is in reasonable fear [of either bodily harm (via a course of conduct or repeated acts)] or of imminent

- 12 -

serious bodily injury[.]" **Raker v. Raker**, 847 A.2d 720, 725 (Pa.Super. 2004). Accordingly, in the case *sub judice*, the intent of Appellee is of no moment. **Id.**

This Court has recognized that "[q]uestions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion [is] present." **Id.** at 726 (citation omitted). However, we have further held that "a person filing a protection from abuse petition will not be rigorously limited to the specific allegation of abuse found in the petition." **Snyder v. Snyder**, 629 A.2d 977, 981 (Pa.Super. 1993).

Further, this Court has held that, "in light of the purpose of the [PFA] Act to prevent imminent harm to abused persons, some flexibility must be allowed in the admission of evidence relating to past acts of abuse." **Raker**, 847 A.2d at 726 (quotation marks and quotation omitted). Accordingly, this Court has held a trial court did not err in considering evidence of abuse, which occurred six years prior to the most recent abuse for which a victim was seeking a PFA order. **Miller on behalf of Walker v. Walker**, 665 A.2d 1252 (Pa.Super. 1995).

Specifically, this Court has reasoned the following:

In light of the protective purposes of the [PFA] Act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the [victim's] entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have

assigned less weight to the testimony. However, it was not an abuse of discretion for the trial court to hear the evidence. Past abusive conduct on the [perpetrator's] part was a crucial inquiry for entry of a proper order.

***Id.*** at 1259.

In the case *sub judice*, the trial court summarily concluded that evidence regarding Appellee's past, violent abuse of Appellant was "irrelevant" and "stale," and the court indicated Appellant needed to focus solely on the most recent alleged incident of abuse. However, while the trial court would have been free to assign the appropriate weight to any such testimony of past abuse, it erred in ruling the evidence was "irrelevant." ***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa.Super. 2020) ("Past acts are significant in determining the reasonableness of a PFA petitioner's fears.") (citation omitted)). Rather, as indicated *supra*, the evidence was relevant in determining whether Appellant was in reasonable fear of either bodily harm (via Appellee's course of conduct or repeatedly committing acts) or of imminent serious bodily injury.[2] ***See Raker***, ***supra***.

In her second issue, Appellant contends the trial court erred in refusing to permit the parties' teenage son to testify about threats Appellee made about killing himself and Appellant. Specifically, Appellant contends the trial

---

[2] Moreover, contrary to the trial court's suggestion, we have found no authority supporting the proposition that a victim may not seek a PFA order when the victim suffers "abuse" as defined by the PFA Act solely because the victim is involved in child custody proceedings with her abuser.

court erred in holding that the parties' son's testimony about Appellee's past statements that he was going to kill Appellant was irrelevant since the statements were "stale." Appellant avers her son's testimony was relevant to demonstrate that Appellant was in reasonable fear of either bodily harm (via Appellee's course of conduct or repeatedly committing acts) or serious bodily harm.

In developing her issue, Appellant specifically points to the following portion of the PFA hearing:

> [APPELLANT'S COUNSEL]: [W]e have the [parties' fourteen-year-old son] here who can testify. It is dated but he could testify as to [Appellee's] threats against [Appellant] to kill her and himself.
>
> [APPELLEE'S COUNSEL]: Your Honor, we had a custody trial. The minor child testified *in camera*. In order to enable myself to defend this on behalf of my client, I asked Judge Hale if we could have the transcript [from the *in camera* hearing]. She said no, she didn't want this transcript floating around, and she didn't want this child any further traumatized.
>
> Frankly, if the offer of proof is that the child is going to talk about stuff that occurred well back into the marriage [before] the separation, it's really not relevant to why there's a current need for a PFA.
>
> [APPELLANT'S COUNSEL]: May I make an offer of proof? Our offer of proof is [on] August 10th of 2021, [Appellee] told their [then] 13-year-old son, he asked him if he knew what an orphanage was and why children would go there. He then contacted his parents and said be prepared to raise the kids because he's go[ing] to kill him and her.
>
> THE COURT: Well, where's the child?
>
> [APPELLANT'S COUNSEL]: Outside
>
> THE COURT: Outside the courtroom or outside in the parking lot?
>
> [APPELLANT'S COUNSEL]: Outside the courtroom.

- 15 -

[APPELLEE'S COUNSEL]: Even still, Your Honor, assuming that were true, that was August of 2021. That's almost two years ago.

THE COURT: Is that when that happened?

[APPELLANT'S COUNSEL]: Yes.

THE COURT: That's not relevant to this proceeding.

*Id.* at 20-22.

In its Rule 1925(a) opinion, the trial court explained that it precluded the parties' teenage son from testifying because his testimony would have been related to prior acts of abuse that were "stale" and "dated." Trial Court Opinion, dated 5/22/23, at 1.

As with Appellant's first issue, we conclude that the trial court erred in this regard. While the trial court would have been free to assign the appropriate weight to any such testimony of past abuse, it erred in ruling the evidence was "irrelevant." **E.K.**, 237 A.3d at 519. Rather, as indicated *supra*, the evidence was relevant in determining whether Appellant was in reasonable fear of either bodily harm (via Appellee's course of conduct or repeatedly committing acts) or of imminent serious bodily injury.[3] **See Raker**, **supra**.

In her third issue, Appellant contends the trial court erred in prohibiting Appellant from testifying about Appellee's behavior towards her, which led to the police filing summary harassment charges that were pending against Appellee at the time of the PFA hearing. In this regard, Appellant notes the

_____

[3] We note Appellee's sole objection to the introduction of the parties' son's proffered testimony was on the basis it was irrelevant, and the trial court sustained the objection on this basis alone.

- 16 -

trial court erred in precluding her testimony about the incidents underlying the harassment charge since the evidence was relevant to Appellant establishing a course of conduct under Subsection 6102(5).

Here, as indicated *supra*, the trial court indicated during the PFA hearing that it was "going to ignore" Appellant's testimony that Appellee had pending harassment charges. The trial court ruled the facts underlying the charge were "not relevant" since the behavior did not occur during the most recent dates of alleged abuse. N.T., 3/22/23/, at 8. Additionally, in its Rule 1925(a) opinion, the trial court explained it refused to permit Appellant to testify about "Appellee's…harassment of her regarding child custody issues" because such threats were "stale." Trial Court Opinion, filed 5/22/23, at 1.

We agree with Appellant that the trial court erred in this regard. **See Rodgers v. Jewett**, 2023 WL 4639041 (Pa.Super. filed 7/20/23) (unpublished memorandum) (indicating trial court properly admitted evidence of harassment charges since prior incident was relevant to reasonableness of the victim's fear); **Carey v. Thompson**, 2022 WL 1597456 (Pa.Super. filed 5/20/22) (unpublished memorandum) (indicating that, even if prior harassment charges were dismissed by magisterial district judge, the facts underlying the charges should be considered during a PFA hearing, which has

a lower burden of proof than a criminal matter, since such would be relevant to whether the victim had a reasonable fear of serious bodily injury).[4]

Simply put, as with Appellant's first and second issues, while the trial court would have been free to assign the appropriate weight to any evidence regarding the pending harassment charges against Appellee, it erred in ruling the evidence was "irrelevant" due to a passage of time. *See E.K.*, *supra* (holding past acts play a significant role in determining the reasonableness of a victim's fear and whether a course of conduct exists); *Buchhalter*, *supra* (indicating the purpose of the PFA Act is to prevent victims of domestic violence from those who perpetrate the abuse with the primary goal of advancing prevention thereof); *Raker*, 847 A.2d at 726 ("[I]n light of the purpose of the [PFA] Act to prevent imminent harm to abused persons, some flexibility must be allowed in the admission of evidence relating to past acts of abuse.") (quotation marks and quotation omitted)).

For all of the foregoing reasons, we vacate the trial court's March 22, 2023, order denying Appellant's petition for a PFA order, and we remand for further proceedings consistent with this decision.

Vacated; Remanded; Jurisdiction relinquished.

---

[4] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value. We find guidance in the unpublished memorandums cited *supra* and find them to be persuasive in this matter.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/21/2023